IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-11-494 |
| | * | |
| DAVID HOWARD | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

David Howard is a thirty-six-year-old federal prisoner who is serving a 384-month sentence for his participation in a string of armed robberies from 2009 to 2011. Now pending is Howard's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF 447). Howard requests that his sentence be reduced to 14 years and one day and that the court modify his judgment so that he is released immediately and can serve the remaining portion of his sentence on home confinement. The government opposes the motion (ECF 456) and Howard has replied (ECF 457).[1] For the reasons explained below, the motion will be granted in part and denied in part. Howard's sentence will be reduced to 216 months.

**BACKGROUND**

In 2009, Howard's high-school friend, Erick Wilson, recruited Howard and Gloria Martino, Howard's then-girlfriend, to participate in a conspiracy in which the group would conduct armed robberies of Dunbar armored cars, with Howard and Wilson taking turns serving as the getaway driver or the individual who would rob the car and Martino orchestrating some logistics and transportation. In 2009, Howard acted as a getaway driver and lookout for two armed robberies in Silver Spring, Maryland using vehicles owned and/or pre-staged at the location of the robberies by

---

[1] Howard has also submitted, through counsel, a notice of supplemental authority (ECF 471), which the court has considered.

Martino. The group committed three similar robberies in 2010 and 2011. On May 17, 2010, Howard brandished a loaded sawed-off shotgun at a Dunbar guard in the vestibule of a Silver Spring Bank of America. He forcibly stole about $73,000 and the guard's handgun. On April 4, 2011, Howard confronted another Dunbar guard in a similar manner and took money and the guard's firearm. Howard acted as a lookout or a driver in a third robbery. Though firearms were used, none of the Dunbar employees were physically harmed during the robberies. (ECF 97, Plea Agreement, Factual Stipulation at 10–12). Prior to this series of events, Howard had several convictions for driving on a suspended license, possession of alcohol under the age of 21, possession of controlled substance paraphernalia, and possession of a handgun. (ECF 117, Presentence Report ¶¶ 82–91). All of these offenses occurred when Howard was under the age of 26. (*Id.*).

In 2012, Howard pled guilty to one count of conspiracy to obstruct commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951, and two counts of using and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF 97, Plea Agreement at 1). At the time of Howard's sentencing, the prevailing interpretation of § 924(c) required the court to impose a mandatory 84-month consecutive sentence on the first § 924 count and a mandatory 300-month sentence on the second § 924(c) count. The conspiracy count initially carried a recommended guideline range of 135 to 168 months. (ECF 117, Presentence Report ¶ 115). As part of his plea agreement, Howard agreed with the government pursuant to Fed. R. Crim. P. 11(c)(1)(C) that a sentence of 384 months and one day was an appropriate disposition of the case. (ECF 97, Plea Agreement, at 6). The Hon. Marvin J. Garbis accepted the agreement and sentenced Howard to a total term of imprisonment of 384 months and one day. (ECF 181, Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Howard submitted a request for compassionate release to the warden of Cumberland FCI on March 25, 2020; his request was denied on March 30, 2020. (ECFs 447-1, 447-2). The government does not contest that Howard has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and compelling reasons" have been shown that would support the reduction of Howard's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

**DISCUSSION**

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the

First Step Act and, as the Fourth Circuit has held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Howard argues that significant changes to federal sentencing law have created disparities between the sentence he received and the sentence he likely would receive today, that he is at risk of severe illness from COVID-19 due to an underlying medical condition, that he has a strong record of rehabilitation, and that, when considered together, these factors establish his right to relief. Specifically, he contends that the First Step Act's clarification that § 924(c) "stacking" triggering the mandatory consecutive twenty-five-year mandatory minimum is not appropriate where multiple § 924(c) convictions are obtained in a single prosecution is grounds for a sentence reduction, in conjunction with other factors, citing *McCoy*, 981 F.3d at 286. The government argues that while Howard received a stacked § 924(c) sentence that would not apply today, his individual circumstances are not sufficiently similar to those presented by the defendants in *McCoy* to find extraordinary and compelling circumstances for a reduction in sentence.

In *McCoy*, the Fourth Circuit affirmed four district court orders granting the motions for reduction of sentence under § 3582(c)(1)(A) of four individual defendants and reducing their sentences to time served. *Id.* at 288. Like Howard, each defendant had been convicted of multiple

violations of 18 U.S.C. § 924(c) associated with their convictions for robbery. At the time of their sentencings, sentences under § 924(c) were "stacked," or imposed consecutively on each other, resulting in mandatory minimums for the defendants ranging from thirty-five to fifty-three years of imprisonment. Were the defendants resentenced today, their sentences would have been dramatically shorter — a striking thirty years shorter for three of the defendants and 200 months shorter for one. *Id.* at 285. After determining that the district courts possessed the discretion to consider "any extraordinary and compelling reason for release that a defendant might raise," *id.* at 284, the Fourth Circuit held that in considering whether the sentencing disparities met that standard, the district courts had appropriately considered "two distinct features" of the defendants' § 924(c) sentences, *id.* at 285. First, the sentences were unusually and grossly lengthy in comparison to more serious offenses, including murder, and were driven almost entirely by § 924(c) stacking. *Id.* Second, the sentences were grossly disproportionate to sentences imposed today under § 924(c) due to intervening changes in the law. *Id.* at 285–86. Additionally, the court noted that the district courts' decisions were the product of an "individualized assessment" of each defendant's sentence that also took into consideration the significant sentences they already had served, their relative youth at the time of the offenses, and their "excellent institutional records" and "substantial steps toward rehabilitation." *Id.* at 286.

In sum, *McCoy* teaches that in considering a defendant's motion for sentence reduction based on subsequent changes in the law that create sentencing disparities, the court should conduct an individualized and holistic assessment of the defendant's circumstances to determine whether there are extraordinary and compelling reasons for relief. The district court may appropriately consider at least the following four factors in making such assessment: (1) whether the sentence imposed is grossly disproportionate to a sentence the defendant would likely receive if sentenced

today, signifying that the sentence is "dramatically longer than necessary or fair;" (2) whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses; (3) the length of the sentence the defendant already has served; and (4) other personal characteristics of the defendant, which may include the defendant's relative youth at the time of the offense and their post-sentencing conduct in the BOP. *Id.* at 285–86. The court will examine each factor in turn as applied to Howard and will consider also his contention that his underlying health condition poses a severe risk of illness due to COVID-19. The court will then consider these factors together.

First, Howard's sentence is disproportionate to the sentence he would likely receive if sentenced today. Under the current law, Howard would be subject to a mandatory 168-month sentence for his § 924(c) convictions, two consecutive seven-year sentences. This is drastically different from the 384-month mandatory minimum Howard faced at the time of his sentencing. But taking into consideration that the initial guideline range for the additional conspiracy count was 135 to 168 months, today Howard's guideline range would be 303 to 336 months. This guideline range is still several years less than the sentence he is serving, but, at the same time, it does not appear that Howard's sentence length was driven entirely by § 924(c) stacking like the defendants in the *McCoy* cases for whom eliminating the practice of § 924(c) stacking nearly halved their advisory ranges. *See McCoy*, 981 F.3d at 285. Nonetheless, the disproportionate difference between the applicable mandatory minimums provides some support for finding Howard is eligible for a sentence reduction.

Second, the court considers whether the sentence imposed is unusually or grossly lengthy in comparison to sentences currently imposed for similar or more serious offenses. The average sentence imposed from 2016 to 2020 where the primary sentencing guideline is U.S.S.G. § 2B3.1,

6

Robbery, was 107 months for an individual with a criminal history category similar to Howard's. United States Sentencing Commission, Interactive Data Analyzer, Average and Median Sentence Length, 2016–2020, Guideline § 2B3.1, Criminal History Category IIII, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last accessed Nov. 2, 2021). Only one-third of individuals sentenced under this guideline received a sentence of 120 months or greater. *Id.* The seriousness of Howard's offenses, and the mandatory minimum penalties associated with them, certainly required a sentence that exceeded 120 months, but the 384-month sentence he received would be highly unusual today even given the seriousness of the offense. *See United States v. Dorsett*, Crim. No. 19-546-GLR, ECFs 27, 39 (defendant sentenced to 150 months for series of nine bank robberies and attempted robberies, committed while on escape status from a halfway house after release for a previous bank robbery conviction); *United States v. Johnson*, Crim. No. 19-352-GLR, ECFs 44, 56 (defendant sentenced to 141 months for series of seven attempted or completed armed bank robberies in which he stated in demand notes that he had a firearm); *United States v. Tingler*, Crim. No. 19-257-DKC, ECFs 109, 162 (defendant sentenced to 168 months after pleading guilty to committing two armed bank robberies during which he brandished a firearm and no victims were physically injured). And defendants who were involved, unlike Howard, in serious physical violence in connection with an armed robbery have received sentences significantly below the thirty-two years Howard received. *See, e.g., United States v. Smith*, Crim. No. 19-205-RDB, ECFs 151, 153 (defendant sentenced to 240 months for armed robbery of a food service business during which he brandished a firearm at employees and a co-defendant shot an employee of the store); *United States v. Day*, No. 19-506-RDB, ECFs 146, 178 (defendant sentenced to 121 months for single armed robbery in which he kicked one victim, a pregnant woman, in the stomach, and struck another repeatedly with his firearm). More striking still, Howard's sentence exceeds some

sentences recently imposed where a death resulted. *See, e.g., United States v. Plummer*, Crim. No. GLR-17-223, ECF 460, 627 (defendant sentenced to 300 months after admitting to firing multiple gunshots into a vehicle, resulting in the death of a child). This factor weighs in favor of finding Howard has presented an extraordinary and compelling reason for a reduction in sentence.

Third, Howard has served nearly one-third of his thirty-two-year sentence, approximately ten years, and less than what would today be the mandatory minimum for his offenses. This factor weighs somewhat against finding that Howard has presented an extraordinary and compelling reason for immediate release.

Fourth, other mitigating characteristics provide support for finding that Howard is eligible for relief. Howard has built a strong institutional record over the last ten years. Howard is employed with UNICOR and is earning satisfactory reports in the program. (ECF 447-5). In 2017, Howard volunteered as a committee member for Young Men Incorporated, a program which identifies prisoners who already have a positive influence within their facility and has them serve as mentors to younger at-risk inmates. (ECF 447-6 at 6). Howard's last disciplinary incident was four-and-a-half years ago, and save for one incident in which Howard was found to have introduced drugs or alcohol into his facility, his record includes only minor infractions. (ECF 447-7). The warden of his facility has acknowledged Howard's rehabilitative efforts, calling Howard's behavior and participation in programming "commendable." (ECF 447-2). The court also considers that Howard was a young adult, between twenty-four and twenty-seven-years old, when he committed the offenses at issue.

Finally, Howard contends that he is at an increased risk of severe illness from COVID-19 because he suffers from chronic chest pain, coughing, and shortness of breath as a result of his recovery from a collapsed lung and damaged bronchial duct in 2014. Howard's BOP medical

records support that chest pain and a cough have been recurring health issues for him since 2014 and 2018, respectively. (ECF 449-1, Medical Records, at 3). The Centers for Disease Control ("CDC") has issued guidance on underlying conditions that increase an individual's risk of severe illness (meaning hospitalization, intensive care, the need for a ventilator, or death) related to COVID-19. *See COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021). Among those conditions that increase the risk of severe illness from COVID-19 are chronic lung diseases, including chronic obstructive pulmonary disease, asthma, interstitial lung disease, cystic fibrosis, and pulmonary hypertension. *Id.* Chest pain, coughing, and shortness of breath are symptoms of some of these conditions. Though the residual effects of Howard's prior surgery are not specifically listed as a risk factor in the CDC's guidance, his symptoms are some indication that he experiences reduced lung capacity that may be similar to that caused by conditions scientists know are risk-factors for COVID-19.

In sum, weighing in favor of a reduction in sentence are the sentencing disparities caused by the imposition of a stacked § 924(c) sentence and Howard's promising institutional conduct. But neither of these considerations persuade the court that immediate release would be appropriate, as Howard has not yet served even the minimum sentence the court would consider today and his health condition does not strongly indicate a risk of severe illness from COVID-19. Considering these factors together, the court is persuaded that Howard has presented an extraordinary and compelling reason for a reduction in sentence, but not for immediate release.

Howard's eligibility for a reduction in sentence does not, however, end the court's inquiry. The First Step Act provides that, before reducing a defendant's sentence for "extraordinary and

compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A).

For many of the reasons stated above, the court finds that the § 3553(a) factors weigh in favor of a sentence reduction. The court considers Howard's history and characteristics, including his post-sentencing conduct, which "provides the most up-to-date-picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). Howard's offenses were and are deeply troubling. Howard participated in five armed robberies of armored cars, using loaded firearms to threaten Dunbar guards and steal their weapons during two of those robberies. Thankfully, no one was physically injured during the course of these crimes, but Howard certainly acted knowing there was significant risk of harm to others. Without minimizing the seriousness of these offenses, the court also must acknowledge that Howard was a young adult when he committed these crimes and that he has no other history of violence.

The court also considers the need for the sentence imposed to protect the public, afford adequate deterrence, reflect the seriousness of the offense, promote respect for the law, and provide for just punishment. 18 U.S.C. § 3553(a)(2)(A)–(C). Given the strength of Howard's institutional record, the opportunity he will have for further improvement for the remainder of his incarceration, and his relatively minimal and non-violent criminal history prior to these offenses, the court does not believe Howard is likely to reoffend upon release. As to the need for the sentence to provide adequate deterrence, promote respect for the law, and provide just punishment for the offense, the government contends that the seriousness of the offense demonstrates that the sentence imposed is appropriate even without the stacked mandatory minimum sentence. While the court agrees that given the facts underlying Howard's conviction, a mandatory minimum sentence of fourteen years would not sufficiently reflect the seriousness of the offense, the court is not persuaded that the

sentence imposed remains necessary given Howard's post sentencing conduct and the significant disparity that exists between his sentence and those imposed for similar offenses today. Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," see 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Howard's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to 216 months, which is 18 years.

## CONCLUSION

For the foregoing reasons, Howard's motion for sentence reduction (ECF 447) will be granted and his sentence will be reduced to a total of 216 months, followed by a five-year term of supervised release. The associated motions to seal (ECFs 448, 454) will be granted to protect the confidentiality of personal information. A separate Order follows.

_11/16/21_
Date

_CCB_
Catherine C. Blake
United States District Judge

sentence imposed remains necessary given Howard's post sentencing conduct and the significant disparity that exists between his sentence and those imposed for similar offenses today. Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," see 18 U.S.C. § 3553(a), the court finds that the § 3553(a) factors weigh in favor of reducing Howard's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to 216 months, which is 18 years.

## CONCLUSION

For the foregoing reasons, Howard's motion for sentence reduction (ECF 447) will be granted and his sentence will be reduced to a total of 216 months, followed by a five-year term of supervised release. The associated motions to seal (ECFs 448, 454) will be granted to protect the confidentiality of personal information. A separate Order follows.

11/18/21
Date

CCB
Catherine C. Blake
United States District Judge

11